# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MARK A. WOOD,                         :

                  Plaintiff,        :      Case No.  3:11cv00032

vs.                          :      District Judge Thomas M. Rose
                                           Magistrate Judge Sharon L. Ovington

PHIL PLUMMER, *et al.*,       :

                Defendants.    :

---

## REPORT AND RECOMMENDATIONS[1] and ORDER

---

Plaintiff Mark A. Wood brings this case *pro se* through a document purporting to contain three "Complaints" (*see* Doc. #10 at 5, 6, 7, 12, 16), and naming as Defendants Phil Plummer;[2] Corrections Officers "Matheny," "Davis," "Rudd," "Mattlock," and John Doe;[3] Nurses "Nickie," "Theresa," and Jane Doe;[4]

---

[1]Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

[2]Although Plaintiff's complaint does not identify him as such, Plummer is the Sheriff of Montgomery County, Ohio.

[3]Identified in Plaintiff's complaint as "[t]he C.O. that dragged me backwards and threw me in a holding cell (unknown name to me)."  (Doc. #10 at 4).

[4]Identified in Plaintiff's complaint as "Nurse (with a breathing apparatice [sic] in her throat)."  (Doc. #10 at 4).

and Dr. Jane Doe.[5]  (Doc. #10 at 4).  The Court previously granted Plaintiff's

motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915.  (*See* Doc.

#9).  The case now is before the Court for a *sua sponte* review pursuant to 28

U.S.C. § 1915(e)(2)(B), to determine whether Plaintiff's complaint, or any portion

of it, should be dismissed because it is frivolous or malicious; fails to state a claim

on which relief may be granted; or seeks monetary relief against a defendant who

is immune from such relief.[6]

## Factual and Procedural Background/Plaintiff's Claims

In the portion of his complaint designated as "Complaint I," Plaintiff

alleges that while he was incarcerated in the Montgomery County jail from

November 10, 2010 through May 8, 2011, Defendants repeatedly denied him

access to medical services for his hip replacement, back problems, severe pain,

and breathing problems, including denying him medications prescribed to treat

those conditions.  (*Id.* at 7-11; *see also id.* at 17)  He also alleges that on November

23, 2010, he re-injured his hip and back and injured his left shoulder and neck

when he fell as the result of being denied the use of a wheelchair to leave the jail

---

[5]Identified in Plaintiff's complaint as "Female African American doctor (name unknown to me)."  (Doc. #10 at 4).

[6]The similar screening provisions of 28 U.S.C. § 1915A presumably do not apply in this case because Plaintiff, although incarcerated at the time of the alleged conduct at issue, no longer was "a prisoner" when he filed this action.  *See Michau v. Charleston County*, 434 F.3d 725, 727 (4th Cir.), *cert. denied*, 548 U.S. 910 (2006).

medical office.  (*Id.* at 9).  According to Plaintiff, the John Doe corrections officer then "handcuffed me and pounced me in a wheelchair and took off with me down the hall pulling me backwards choking me with my shirt."  (*Id.*).  Plaintiff alleges that while being pulled in this manner, "I fell out of the wheelchair" (*id.* at 10), "then [was] roughly pounced back in the wheelchair and pulled and choked some more and then thrown in a holding cell and left there . . . in extra severe pain for several hours."  (*Id.*).  He asserts that although he "began hyper-ventilating and could barely breath" while in that cell, his pleas for help were "just ignored," both then and thereafter.  (*Id.*).

In addition [per "Complaint II"], Plaintiff contends that on December 6, 2010, in response to a grievance Plaintiff filed, Defendants threatened to lock Plaintiff in a holding cell if he would not go to the medical office "to sign some bogas [sic] papers" (*id.* at 15) related to his grievance.  (*Id.* at 12-15).  Finally, asserting in "Complaint III" that on December 7, 2010, "the entire . . . unit in which I was housed . . . was disbursed and everyone w[as] moved to different housing units," Plaintiff contends that such move "was merely a tactic of disbursing all the eye witnesses that pertained to my grievance."  (*Id.* at 16).  He also alleges that he thereafter was housed on upper levels that "made it very hard for me to go and eat my meals" (*id.*), and that his medical issues and grievances

continued to be ignored. (*Id.* at 17). Asserting that Defendants violated his

"Constitutional right of safe medical service" as well as "several other rights . . .

clearly stated in the Montgomery County jail prisoner's handbook" (*id.*), Plaintiff

asks that Defendants be "made accountable . . ., including [through] disciplinary

action," and that he

> be compensated for the severe pain and suffering I
> endured as a result of the neglegence [sic] of the
> Montgomery County jail staff, including the denial of
> safe medical services, mental abuse, verbal abuse and
> physical abuse with malice.

(Doc. #10 at 18).

## Review Under 28 U.S.C. § 1915(e)(2)(B)

Complaints filed *in forma pauperis* are subject to the screening requirements

of 28 U.S.C. § 1915(e)(2). *Asberry v. Bisig*, 70 F. App'x 247, 249 (6th Cir. 2003)

(citing *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000)). In accordance with

Section 1915(e)(2)(B)(ii), a district court must dismiss any case brought *in forma*

*pauperis* "if the court determines that . . . the action . . . fails to state a claim on

which relief may be granted." *See Moniz v. Hines*, 92 F. App'x 208, 210 (6th Cir.

2004) (citing *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999)). Dismissal also

is appropriate under Section 1915(e)(2)(B)(i) if the action is "frivolous" as to the

named defendants. *See McCallum v. Gilless*, 38 F. App'x 213, 215 (6th Cir. 2002).

If a complaint raises a claim with an arguable or rational basis in fact or

4

law, it is neither frivolous nor malicious, and it may not be dismissed *sua sponte*. *Brand v. Motley*, 526 F.3d 921, 923-24 (6th Cir. 2008); *see Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). A complaint has no arguable <u>factual</u> basis when its allegations are "fantastic or delusional." *Brand*, 526 F.3d at 923 (quoting *Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989)); *see Lawler,* 898 F.2d at 1199. A complaint has no arguable <u>legal</u> basis when it presents "indisputably meritless" legal theories – for example, when "it is clear that the defendants are immune from suit," or when claims are premised on infringement of a legal interest that clearly does not exist. *Neitzke*, 490 U.S. at 327-28. Dismissal *sua sponte* of an *in forma pauperis* complaint is appropriate where the complaint is subject to an affirmative defense such as the statute of limitations and therefore is frivolous on its face. *Day v. E.I. Du Pont de Nemours & Co.*, 165 F.3d 27 [table], 1998 WL 669939, at *1 (6th Cir. ) (citing, *inter alia*, *McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th Cir.1997)), *cert. denied*, 525 U.S. 857 (1998).

<u>**Analysis**</u>

<u>*Viable Legal Theory*</u>

Under the Federal Rules of Civil Procedure, a civil complaint <u>must</u> contain these three elements: 1) a statement of the grounds for the court's jurisdiction; 2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and 3) "a demand for the relief sought." Fed. R. Civ. P. 8(a). Even *pro se*

litigants are required to adhere to these basic essentials of notice pleading. *See Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing, *inter alia, Haines v. Kerner*, 404 U.S. 519, 521 (1972) (*per curiam*)). Courts "should not have to guess at the nature of the claim asserted." *Id.* (citing *Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167 (6th Cir. 1975)); *see also Taylor v. Sea Way Food Town*, 187 F.3d 638 [table], 1999 WL 617953, at *1 (6th Cir. 1999) (court "is [not] required to create [*pro se* plaintiff's] claim for him"). Accordingly, complaints that are "completely incomprehensible" and "contain[ ] no legal theories upon which a valid federal claim may rest" should be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2). *Abner v. SBC (Ameritech)*, 86 F. App'x 958 (6th Cir. 2004); *see also Mitchell v. Community Care Fellowship*, 8 F. App'x 512, 513 (6th Cir. 2001) (complaint "must contain 'either direct or inferential allegations respecting all the material elements to sustain a recovery under <u>some</u> viable legal theory,'" and court "is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions") (emphasis in original) (citing, *inter alia, Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988), *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996)).

Here, Plaintiff describes generally the legal nature of the claims he wishes to pursue – *i.e.*, that his "Constitutional right of safe medical service" and

"several other rights . . . clearly stated in the Montgomery County jail prisoner's handbook" allegedly were violated (Doc. #10 at 17), and that he allegedly endured "the denial of safe medical services, mental abuse, verbal abuse and physical abuse with malice" as a result of Defendants' "neglegence" [sic].  (*Id.* at 18).  He also sets forth a clear demand for relief in the form of "disciplinary action" or other accountability measures against Defendants, as well as "compensation" for his "severe pain and suffering."  (*Id.*).  Nowhere, however, does Plaintiff specifically identify the purported source of this Court's jurisdiction.  (*See* Doc. #10).

Nevertheless, even when a *pro se* plaintiff's complaint identifies "no basis for federal subject matter jurisdiction," a district court may construe the complaint as one asserting a federal civil rights action.  *See Moore v. Erickson*, 80 F. App'x 419 (6th Cir. 2003).  In this case, Plaintiff's complaint elaborates at some length about supposed wrongs allegedly committed by various Defendants acting on behalf of the Montgomery County, Ohio, jail.  (*See* Doc. #10 at 7-18).  From those allegations, this Court reasonably can infer that Plaintiff intends to set forth claims for purported civil rights violations by government personnel.

Seemingly the most apposite federal civil rights statute is 42 U.S.C. § 1983,[7]

---

[7]Because Plaintiff's complaint makes no allusion to any equal protection concerns or any alleged conspiracy, 42 U.S.C. §§ 1985 and 1986 would not appear to apply.

which "provides a private right of action for those persons subject to a deprivation of the 'rights, privileges or immunities' guaranteed under the Constitution when that deprivation is effected by a person operating 'under color of any statute, ordinance, regulation, custom, or usage' of a governmental entity." *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). This Court's assumption that Plaintiff intends to articulate Section 1983 claims against these Defendants leads to the corollary assumption that jurisdiction would be proper pursuant to 28 U.S.C. § 1331. Accordingly, the Court concludes that Plaintiff's complaint suffices to overcome Rule 8(a)'s initial "viable legal theory" hurdle.

*Viable Section 1983 Claim*

Next, the Court must determine whether Plaintiff's claims have "an arguable or rational basis in fact or law." *Brand*, 526 F.3d at 923-24. To accomplish this, the Court must examine separately the factual allegations underlying various putative claims against Defendants, and also must scrutinize the legal sufficiency of Plaintiff's allegations as against particular Defendants, in order to assess whether Plaintiff has articulated viable Section 1983 claims against each named Defendant.

a.    Section 1983 Liability Re Grievances

In his "complaint III," Plaintiff avers that he "dialed the grievance line" while housed in the Montgomery County jail and left "at least 50 messages," but

8

was "just . . . ignored." (Doc. #10 at 17). He also asserts that Defendants did not

return "carbon copies" of a grievance he filed on November 23, 2010. (*Id.*).

"Prison officials are not liable under § 1983 for denying or failing to act on

grievances." *Barnett v. Luttrell*, No. 08-6432, 2011 WL 831528, at *2 (6th Cir. Mar.

10, 2011) (citing *Grinter*, 532 F.3d at 576). This is true because "[t]he mere denial

of a prisoner's grievance states no claim of constitutional dimension." *Alder v.

Correctional Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003), *cert. denied*, 541 U.S.

961 (2004) (citing, *inter alia, Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001)

("The denial of [a] grievance is not the same as the denial of a request to receive

medical care.").

Although Plaintiff's complaint can be read to seek relief for the failure of

Montgomery County jail personnel to act on his multiple grievances, no federal

constitutional claim will lie for such alleged inaction. Accordingly, to the extent

that Plaintiff attempts to articulate a Section 1983 claim premised on any

Defendant's alleged failure to act on Plaintiff's purported multiple grievances,

such proffered claim should be dismissed for failure to state a claim on which

relief may be granted.

b.     Section 1983 Liability Re Disbursal Of Witnesses

Also in his "complaint III," Plaintiff alleges that one day after he filed a

grievance on December 6, 2010, the entire unit in which he had been housed "was disbursed and everyone w[as] moved to different housing units." (Doc. #10 at 16). According to Plaintiff, "it would seem" that the explanation given for that move[8] was merely a pretense for "disbursing all the eye witnesses that pertained to my grievance." (*Id.*). Plaintiff's speculation to that effect aside, no rational inference can be drawn that some Defendant or Defendants, a single day after Plaintiff's grievance, arranged to empty an entire unit of the Montgomery County jail simply to stymie Plaintiff's access to potential witnesses to the alleged events underlying his grievance. To the contrary, Plaintiff's allegation to this effect smacks of the sort of "fantastic or delusional" factual averments condemned in *Brand*, 526 F.3d at 923.

Moreover, Plaintiff has not identified, nor can this Court discern, any plausible Constitutional violation implicated by the conduct alleged. This Court therefore concludes that any Section 1983 claim premised on Defendants' alleged movement of inmates from Plaintiff's Montgomery County jail housing unit on December 7, 2010, should be dismissed *sua sponte* as frivolous or malicious, and/or for failure to state a claim on which relief can be granted, in accordance with 28 U.S.C. § 1915(e)(2)(B).

---

[8]Plaintiff contends that such space supposedly "was needed to house some women," but "was still unoccupied" two months later. (Doc. #10 at 16).

c.     Section 1983 Liability Re Denial Of Medical Treatment

The Eighth Amendment's prohibition on cruel and unusual punishment bars punishments that violate society's standards of decency or "involve the unnecessary and wanton infliction of pain." *Carter v. Vandercrook*, 59 F. App'x 52, 54 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976), *cert. denied*, 541 U.S. 941 (2004)). "Generally, the denial of a prisoner's request for medical care alone will not give rise to a cause of action under 42 U.S.C. § 1983." *Blair v. Cuyahoga County Sheriff*, 810 F.2d 199 [table], 1986 WL 18393, at *1 (6th Cir. Nov. 14, 1986). "Rather, the withholding of medical services must be accompanied by circumstances which demonstrate a deliberate indifference to the prisoner's suffering on the part of those charged with his care and custody." *Id.* (citing *Byrd v. Wilson*, 701 F.2d 592 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir. 1976)). The standard for a viable claim for denial of medical treatment while in custody involves both a subjective and an objective component. *Vandercrook*, 59 F. App'x at 54. The subjective "deliberate indifference" component requires "the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994)). The objective component requires a Section 1983 plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious as to deny him "the minimal

civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992) ("courts considering a prisoner's claim must ask both if 'the official act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation.").

Here, Plaintiff avers generally that throughout his six-month incarceration, the Montgomery County jail medical staff repeatedly denied him medical services (Doc. #10 at 7), including refusing to contact Plaintiff's doctors or pharmacies about his prescription medications (*id.* at 8); denying him the use of a wheelchair (*id.* at 9, 10-11); denying him pain medication (*id.* at 17); and otherwise failing to treat or accommodate Plaintiff's pain, hip replacement, back problems and breathing problems (*id.* at 10, 11, 15, 16, 17); even after Plaintiff "informed them that I couldn't [walk] because my hip had locked up on me and that my back was hurting and that I was in severe pain." (*Id.* at 8)  On their face, Plaintiff's allegations would seem to satisfy both the subjective and objective components of a viable Eighth Amendment claim for denial of medical treatment.  *See Vandercrook*, 59 F. App'x at 54.  Subjectively, Plaintiff suggests that Defendants were made aware of but were deliberately indifferent to his need for a wheelchair or other assistance with mobility, recklessly disregarding the

12

substantial risk that he could be seriously harmed by falling and damaging his

hip replacement, aggravating his pre-existing hip and back problems, or

receiving other injuries.  *See id.*  Objectively, Plaintiff suggests that the denial of

such assistance in fact caused him to fall, further injuring himself, and to suffer

pain.  Accordingly, Plaintiff's general allegations are sufficient to survive this

initial review as to an Eighth Amendment claim for deliberate indifference to his

serious medical needs.

Nevertheless, the Court must further examine, *infra*, such claims as they

relate to specific Defendants.  Where a plaintiff fails to allege that specific

defendants "were directly involved in his medical care or condoned, encouraged,

or knowingly acquiesced in the alleged misconduct[,] . . . he has no § 1983 claim

against them . . ."  *McCallum*, 38 F. App'x at 215 (citing *Taylor v. Michigan Dep't of*

*Corr.*, 69 F.3d 76, 80-81 (6ᵗʰ Cir. 1995)).  An individual designated as a defendant

also will not be held liable under Section 1983 if the plaintiff "did not explain his

connection to the case," or if the Plaintiff "did not allege that he was involved in

[the plaintiff's] medical care."  *Id.*; *see also Martin*, 14 F. App'x at 309 (dismissal

proper where plaintiff "failed to allege any personal involvement by defendant"

in, or that defendant "condoned or otherwise approved of," the alleged denial of

medical care).

One aspect of Plaintiff's deliberate indifference claims will not pass

preliminary scrutiny as to any Defendant.  Plaintiff acknowledges that he was taken for x-rays after falling at the jail on December 23, 2010 (*see* Doc. #10 at 10-11), and that he later was told that such x-rays "were normal."  (*Id.* at 14).  Although offering nothing to contradict this reported result, Plaintiff asserts that "I do not hold these x-ray conclusions . . . to be accurate or valid," maintaining that "some injurys [sic] would not show up on a mere x-ray."  (*Id.* at 15).

To the extent that Plaintiff attempts to premise an Eighth Amendment claim on an assertion that taking x-rays alone was an insufficient response to his fall, that claim must fail.  "Federal courts will not engage in second guessing the choice of a treatment program by medical personnel."  *Washington v. Sommerville*, 181 F.3d 106 [table], 1999 WL 253652, at *2 (6th Cir. 1999) (citing *Westlake*, 537 F.2d at 860).  Jail personnel's actions generally do not constitute deliberate indifference where an inmate received some medical care and merely disputes the adequacy of that treatment.  *Beard v. Pinkstaff*, 113 F.3d 1234 [table], 1997 WL 210782, at *1 (6th Cir. 1997) (citing, *inter alia*, *Westlake*, 537 F.2d at 860 n.5).  Accordingly, an inmate is unlikely to be able to state an Eighth Amendment claim based simply on his disagreement with the judgment of medical personnel regarding what treatment, if any, should be rendered for his condition.  *See Sommerville*, 1999 WL 253652, at *2.  Such disagreement "alleges no more than a medical malpractice claim, which is a tort actionable in state court, but is not cognizable under §

14

1983." *Davis v. Sapp*, 211 F.3d 1268 [table], 2000 WL 572067, at *2 (6th Cir. 2000)

(citing *Street v. Corrections Corp. of America*, 102 F.3d 810, 816 n.13 (6th Cir. 1996);

*Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995)).  Here, Plaintiff may not

maintain an Eighth Amendment claim based on Defendants' failure to perform

additional diagnostic testing after he fell.

Having concluded that Plaintiff has articulated a viable Eighth

Amendment claim for deliberate indifference generally, the Court also must

examine whether Plaintiff has set forth viable such claims as against the specific

named Defendants.  In bringing Section 1983 actions, plaintiffs are required to

specify whether government defendants are being sued in their individual

capacities for damages.  *See Wells*, 891 F.2d at 592.  "[A]bsent any indication that [

] defendants are being sued individually, we must assume that they are being

sued in their official capacities . . ."  *Whittington v. Milby*, 928 F.2d 188, 193 (6th

Cir.) (cited with favor in *Moore v. City of Harriman*, 272 F.3d 769, 772 (2001), *cert.*

*denied*, 536 U.S. 922 (2002)), *cert. denied*, 502 U.S. 883 (1991).  A complaint's listing

of defendants by their official titles is an indication that they are sued in their

official capacities.  *See Moore*, 272 F.3d at 773.

"[A] suit against a governmental officer 'in his official capacity' is the same

as a suit 'against [the] entity of which [the] officer is an agent,' and 'imposes

liability on the entity that [the officer] represents.'"  *McMillian v. Monroe County*,

520 U.S. 781, 785 n.2 (1997) (citations and internal quotation marks omitted).  To

state a claim against a municipality under Section 1983 for monetary, declaratory,

or injunctive relief, a plaintiff must show: 1) a deprivation of his constitutional or

federal rights, 2) that occurred pursuant to a custom, usage, or official policy of

the municipality.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690-91

(1978).  Regarding the latter requirement, Section 1983 liability attaches to a

municipality only when the execution of its "policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent

official policy," caused the plaintiff's injury.  *Monell*, 436 U.S. at 694; *see also City of

Canton v. Harris*, 489 U.S. 378, 385 (1989) (affirming that a municipality may be

"liable under § 1983 only where the municipality <u>itself</u> causes the constitutional

violation at issue" through execution of its policies or customs) (emphasis in

original) (internal quotation marks omitted); *Pembaur v. City of Cincinnati*,  475

U.S. 469, 479 (1986) (reiterating that municipality is liable only for conduct

undertaken pursuant to "official policy").  The policy or custom must originate

from the "official or officials responsible for establishing final policy with respect

to the subject matter in question."  *Pembaur*, 475 U.S. at 483.  Section 1983 liability

does not lie against a municipality solely because it employed a tortfeasor or

based upon a theory of *respondeat superior* or vicarious liability.  *Monell*, 436 U.S.

at 691.

16

With this legal framework in mind, the Court turns to a Defendant-by-Defendant analysis of Plaintiff's allegations.

        i.     *Defendant Plummer*

Although Plaintiff's complaint twice designates "Phil Plummer" as the lead Defendant in this action (Doc. #10 at 1, 4), nowhere within the body of that document do Plaintiff's allegations target or even mention any conduct by Defendant Plummer himself, or otherwise explain why Plummer is named as a Defendant. (*See* Doc. 10). Despite Plaintiff's omission in that regard, the Court surmises that Plaintiff sued Plummer due to his role as Montgomery County Sheriff. (*See* n.2, *supra*). Because Plaintiff has identified no misconduct attributable to Plummer personally, the Court further deduces that Plaintiff has named Plummer as a Defendant in his official capacity only. *See Moore*, 272 F.3d at 771-73.

Assuming *arguendo* that Plaintiff's complaint alleges violations of constitutional rights sufficient to support his claims for initial screening purposes, Plaintiff's complaint nonetheless fails to allege that any purported violations occurred pursuant to Montgomery County's customs, usages, or official policies so as to satisfy the second prerequisite for municipal liability. *See Monell*, 436 U.S. at 690-91. Indeed, to the contrary, by alleging that the conduct to which he objects was inconsistent with "the Montgomery County jail prisoner's

17

handbook" (*see* Doc. #10 at 17; *see also id.* at 8), Plaintiff in effect concedes that the alleged actions of which he complains were <u>not</u> the product of Montgomery County's "official policy." *Monell*, 436 U.S. at 690-91.

Because Plaintiff's complaint fails to state any claim upon which relief may be granted against Plummer in his official or individual capacity, dismissal of Plaintiff's Section 1983 claims for denial of medical care as against Defendant Plummer is appropriate.

ii.  *Defendant Matheny*

Beyond identifying Defendant Matheny as a corrections officer (*see* Doc. #10 at 4), the only portions of Plaintiff's complaint that reasonably can be read as relating specifically to Matheny are as follows:

> [On November 23, 2010,] . . . Seargent Whitaker . . . had C.O. Matheny get me a wheelchair.
>
> C.O. Matheny then wheeled me to the medical office where I encountered Nurse Theresa and the African American female doctor.
>
> After more denial of medical services and being ridiculed[,] they again attempted to make me walk out of the office and back to the dorm without any assistance.  They even denied me the use of the wheelchair that I was wheeled down to the office in.
>
> As a result . . .[,] my hip and leg gave way and I went crashing to the ground . . . [M]y hip was re-injured, my back was re-injured[,] and my left should and neck w[ere] injured.

18

> While I lay there on th floor hurt, screaming[,] and in severe pain[,] a few c.o.s just stood over me and told me to shut up all that noise . . .
>
> * * * [description of alleged use of force by different corrections officer, followed by isolation in a holding cell] * * *
>
> Hours later I was transported back to the housing dorm . . . by C.O. Matheny and company. I was made to get in and out of the wheelchair without any assistance.

(Doc. #10 at 8-10).

When coupled with Plaintiff's suggestion that he had advised the medical staff that his hip "had locked up" and he was unable to walk (*see* Doc. #10 at 8), the foregoing excerpt is sufficient to suggest that Defendant Matheny may have been deliberately indifferent to Plaintiff's possible serious medical need for ambulatory assistance. At this early stage of litigation, the Court cannot conclude with certainty that Plaintiff would be unable to state a viable Section 1983 claim against Defendant Matheny for denial of medical services, and such claim therefore cannot be dismissed on that basis.

iii.    *Defendant Nurse Nickie*

"Nurse Nickie" appears among the Defendants listed in Plaintiff's complaint (Doc. #10 at 4), but the Court has found no mention of that name elsewhere in that document. (*See* Doc. #10). The complaint does refer to an unnamed "transporting nurse" who purportedly refused to allow Plaintiff to sign

certain papers in his housing unit rather than in the medical center (*see id.* at 12),

but the complaint gives no indication that such individual was "Nurse Nickie,"

and the allegations as to that "transporting nurse" also are inadequate as a matter

of law to state a claim for deliberate indifference to a serious medical need.  (*See*

*id.*).  As a result, Plaintiff's Section 1983 claim against Defendant Nurse Nickie for

denial of medical services should be dismissed as frivolous and/or for failure to

state a claim on which relief can be granted.

iv.    *Defendant Nurse Theresa and Dr. Jane Doe*

The entirety of the allegations directed specifically toward "Nurse

Theresa" and the "female African American doctor" named as Defendants in

Plaintiff's complaint (Doc. #10 at 4) consists of the following:

> . . . [On November 23, 2010,] the medical staff attempted
> to force me to walk after I informed them that I couldn't
> because my hip had locked up on me and that my back
> was hurting and that I was in severe pain.
>
> * * * [Seargent Whitaker had Defendant Matheny get
> Plaintiff a wheelchair.] * * *
>
> C.O. Matheny . . . wheeled me to the medical office
> where I encountered Nurse Theresa and the African
> American female doctor.
>
> After more denial of medical services and being
> ridiculed[,] they again attempted to make me walk out
> of the office and back to the dorm without any
> assistance.  They even denied me the use of the
> wheelchair that I was wheeled down to the office in.

20

As a result . . .[,] my hip and leg gave way and I went crashing to the ground . . . [M]y hip was re-injured, my back was re-injured[,] and my left should and neck w[ere] injured.

* * *

[On December 6, 2010, when Plaintiff was summoned to the medical office], Nurse Theresa and another lady that said she would be handling the grievance I filed came to the door.  They were motioning me and trying to persuade me to come down the hall to the office to sign some papers concerning the grievance.

. . .  I asked them could I sign the papers right there in the waiting room.  They said no and kept motioning me to go down the hall. . . . I declined and said that I would sign them some other time because I did not feel safe.

Irrately [sic] they said that they would write me up as a refusal and then they left . . .

Five minutes later Nurse Theresa came back to the door and told me that my x-rays were normal.

(Doc. #10 at 9, 14).

Plaintiff's complaint fails to state a claim on which relief can be granted as to Defendant Nurse Theresa's alleged actions on December 6, 2010.  Plaintiff himself acknowledges that "my business on this date was not medical in nature at all."  (Doc. #10 at 15).  Accordingly, Defendant Nurse Theresa cannot have violated Plaintiff's constitutional rights by failing to render medical services at a time when Plaintiff was not seeking such.  Moreover, Plaintiff has evoked no

other constitutional right implicated by Defendant Nurse Theresa's refusal to allow Plaintiff to sign grievance-related papers in the medical office waiting room rather than within the medical office itself.  Plaintiff's Section 1983 claim on that basis thus should be dismissed as frivolous and/or for failure to state a claim on which relief can be granted.

The same conclusion does not follow, however, as to Plaintiff's allegations regarding Nurse Theresa's and Dr. Jane Doe's conduct on November 23, 2010.  In light of the allegation that Plaintiff had told the medical staff that he could not walk due to pain and hip and back problems (*see* Doc. #10 at 8), Plaintiff's other allegations suggest that Defendant Nurse Theresa and Dr. Jane Doe may have been deliberately indifferent to a possible serious medical need for ambulatory assistance.  Again, the Court is unable to say definitively at this early stage of litigation that Plaintiff would be unable to state a viable Section 1983 claim against Defendant Nurse Theresa and Dr. Jane Doe for denial of medical services, and such claim therefore cannot be dismissed on that basis.

v.    *Defendant Nurse Jane Doe*

Although Plaintiff lists "Nurse (with a breathing apparatice [sic] in her throat)" among the Defendants to his action (Doc. #10 at 4), a thorough review of that document reveals no further reference to such an individual.  (*See* Doc. 10). As noted *supra*, the complaint does mention an unnamed "transporting nurse"

(*see id.* at 12), but never suggests that such individual was the Jane Doe Nurse included among the listed Defendants.  (*See id.* at 4).  Additionally, as also noted *supra*, Plaintiff's allegations regarding that "transporting nurse" fail as a matter of law to state a viable claim for deliberate indifference to a serious medical need. (*See id.* at 12).  As a result, Plaintiff's Section 1983 claim against Defendant Nurse Jane Doe for denial of medical services should be dismissed as frivolous and/or for failure to state a claim on which relief can be granted.

> vi.     *Defendants Davis and Rudd*

The specific allegations of Plaintiff's complaint as to Corrections Officers Davis and Rudd are as follows:

> [On December 23, 2010, about one hour after Plaintiff was returned to his housing unit], C.O. Davis and C.O. Rudd came back . . . to get me to take me back to the medical office for x-rays.  They did not bring a wheelchair.  Again I told them that I couldn't walk and that I was in severe pain and that I could [ ] barely breath.  They showed no compassion and told me I had to come.  I had to slide a chair all the way to and from the medical office because of my condition.
>
> In the x-ray room[,] I wasn't given any assistance getting on or off the x-ray table and I was made to pose in various ways which was very painful.
>
> After sliding back down the hall to return to [my housing unit], C.O. Davis hollered at me and told me to get my cripple ass in there and then he taunted me with his name badge and said "remember me, my name is Davis."  I thought he was going to hit me but he didn't.

23

He then told me that I and my lawyer can kiss his ass.

(Doc. #10 at 10-11).

As with his allegations against Defendants Matheny and Nurse Theresa, Plaintiff's allegations regarding Defendants Davis and Rudd, if accepted as true, suffice to suggest that by denying Plaintiff the use of a wheelchair, those two corrections officers may have been deliberately indifferent to a possible serious medical need for ambulatory assistance. Additional allegations that Plaintiff was "hollered at" and "taunted" by Defendant Davis (Doc. #10 at 11), however, do not give rise to any colorable constitutional claim. As to the latter allegations, Plaintiff's Section 1983 claim should be dismissed as frivolous and/or for failure to state a claim on which relief can be granted. His Eighth Amendment claim related to denial of medical care, however, survives as to those two Defendants.

vii. *Defendant Mattlock*

"C.O. Mattlock" is designated as a Defendant on the page of Plaintiff's complaint enumerating the Defendant parties (Doc. #10 at 1, 4), but is mentioned nowhere else within the body of that document. (*See* Doc. 10). As such, the Court has no basis for finding that Plaintiff has stated a claim against Defendant Mattlock in either his official or individual capacity. Accordingly, Plaintiff's Section 1983 claim should be dismissed as frivolous and/or for failure to state a claim on which relief can be granted as against Defendant Mattlock.

24

        *viii.*   *Defendant John Doe*

Finally, Plaintiff designates as a Defendant an unnamed corrections officer "that dragged me backwards and threw me in a holding cell (unknown name to me)." (Doc. #10 at 4). The more specific allegations against that Defendant aver that after Plaintiff's "hip and leg gave way and I went crashing to the ground," suffering injuries,

> . . . one of the C.O.s handcuffed me and pounced me in a wheelchair and took off with me down the hall pulling me backwards choking me with my shirt.
>
> I gurgled out your [sic] choking me but he just continued. I was pulled in such a manner that I fell out of the wheelchair then [was] roughly pounced back in the wheelchair and pulled and choked some more and then thrown in a holding cell and left there screaming and hollering and in extra severe pain for several hours.

(Doc. #10 at 9-10).

Accepted as true for purposes of Section 1915(e)(2)(B) review, those allegations indicate that Defendant John Doe may have been deliberately indifferent to Plaintiff's serious medical needs. Because this Court cannot conclude that Plaintiff would be unable to state a viable Section 1983 claim against Defendant John Doe for denial of medical services, such claim cannot be dismissed on that basis.

        d.   <u>Section 1983 Liability Re Use Of Excessive Force</u>

25

An incarcerated person may be able to maintain a Section 1983 action for post-conviction use of excessive force, but such a claim must be raised "exclusively under the Eighth Amendment's cruel and unusual punishment clause." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1036-37 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995)). The standard for analyzing excessive force claims under the Eighth Amendment is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7.

Although maintaining prison security and discipline "may require that inmates be subjected to physical contact actionable as assault under common law," *Combs*, 315 F.3d at 556, "a violation of the Eighth Amendment will nevertheless occur if the offending conduct reflects an unnecessary and wanton infliction of pain." *Id*. (citing *Pelfrey*, 43 F.3d at 1037). Factors to be considered in determining whether a particular use of force was wanton and unnecessary include the extent of injury suffered by an inmate, the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and "any efforts made to temper the severity of a forceful response." *Id*. at 556-57 (quoting *Hudson*, 503 U.S. at 7).

The complaint's allegations regarding Defendant John Doe's purported

26

treatment of Plaintiff following Plaintiff's fall (*see* Doc. #10 at 9-10) set forth a colorable Section 1983 claim under the Eighth Amendment for use of excessive force, sufficient to withstand scrutiny for purposes of this initial screening. The Court further notes, however, that Plaintiff's allegations of use of excessive force involve only that single Defendant – the John Doe corrections officer (*see* Doc. #10 at 4, 9-10) – and therefore suffice to state a facially-viable excessive force claim against that Defendant only.

For the foregoing reasons, this Court's *sua sponte* review under 28 U.S.C. § 1915(e)(2)(B) leads to the conclusion that Plaintiff's complaint should be dismissed as frivolous and/or for failing to state a claim on which relief may be granted <u>except</u> as to Plaintiff's claim against Defendants C.O. Matheny. Nurse Theresa, Dr. Jane Doe, C.O. Davis, C.O. Rudd, and C.O. John Doe, based upon the alleged denial of medical services while Plaintiff was in custody; and against Defendant C.O. John Doe, based upon his alleged use of excessive force. The complaint should be dismissed in its entirety as against Defendants Phil Plummer, Nurse Nickie, Nurse Jane Doe, and C.O. Mattlock.

**IT THEREFORE IS RECOMMENDED THAT:**

1.  Plaintiff's action remain pending in this Court ONLY as his 28 U.S.C. § 1983 claims under the Eighth Amendment for denial of medical treatment against Defendants C.O. Matheny, Nurse Theresa, Dr. Jane Doe, C.O. Davis, C.O. Rudd, and C.O. John Doe; and for use of excessive force against Defendant C.O. John Doe;

27

2.    The United States Marshal serve a copy of the Complaint, summons, and this Order upon the above-named defendant as directed by Plaintiff.  All costs of service shall be advanced by the United States

3.    Plaintiff must serve the named defendant – or his attorney in the event an attorney's appearance is entered in the record – with a copy of every document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date and verifying that Plaintiff mailed a true and correct copy of any document to defendants or their attorney(s).  Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk of Court or that fails to include a certificate of service will be disregarded by the Court;

4.    Plaintiff must inform the Clerk of Court promptly of any changes of address which he has during the pendency of this lawsuit.  Failure to do so may result in dismissal of his case for failure to prosecute;

5.    Plaintiff's Complaint (Doc. #10) be DISMISSED with prejudice in all other regards, including as to all claims set forth against Defendants Phil Plummer, Nurse Nickie, Nurse Jane Doe, and C.O. Mattlock; and,

6.    The Court certify pursuant to 28 U.S.C. §1915(a)(3) that for the foregoing reasons an appeal of an Order adopting this Report and Recommendations would not be taken in good faith.

June 27, 2011                                    s/Sharon L. Ovington
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge

28

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen [14] days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen [17] days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen [14] days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).