IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MARK A. WOOD,                          :          Case No. 3:11-CV-32

        Plaintiff,                          District Judge Thomas M. Rose
                                                  Magistrate Judge Michael J. Newman
   v.                                 :

PHIL PLUMMER, *et al.*,

        Defendants.                          :

## REPORT AND RECOMMENDATION[1]

This is a *pro se* 42 U.S.C. § 1983 case.  Plaintiff Mark Wood ("Plaintiff") claims his

Eighth Amendment rights were violated based on alleged denial of medical of care and an

alleged use of excessive force while an inmate in the Montgomery County, Ohio Jail ("Jail").  He

brings this lawsuit against two medical staff at the Jail (a doctor and a nurse) and several Jail

staff (the Deputy Sheriff and multiple corrections officers ("C.O.").[2]  This matter is before the

Court upon two motions for summary judgment:  the first, by Brenda Ellis, M.D. (named in the

complaint as "Dr. Jane Doe") and Teresa O'Malley, R.N. (named in the complaint as "Nurse

Theresa") (Medical Defendants' summary judgment motion) (doc. 36); the second, by

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.
[2] Upon the *in forma pauperis* filing of Plaintiff's complaint, the Court conducted a *sua sponte* review of his claims pursuant to 28 U.S.C. § 1915(e)(2)(B).  After a careful review of Plaintiff's *pro se* complaint, the Court dismissed most of his claims as frivolous and/or for failing to state a claim upon which relief can be granted.  *See* docs. 12, 18.  The Court permitted Plaintiff, however, to proceed on the following two Eighth Amendment claims:  (1) an alleged denial of medical care (against Defendants C.O. Matheney, Nurse Theresa, Dr. Jane Doe, C.O. Davis, C.O. Rudd, and C.O. John Doe); and (2) an alleged use of excessive force (against Defendant C.O. John Doe).  *See* docs. 12, 18.
.

Defendants Robert Rosenkranz[3]; Holly Rudd; James Davis, Jr.; and Debra Matheney (Jail Staff Defendants' summary judgment motion) (doc. 39).[4]  *Pro se* Plaintiff filed a one-page memorandum in opposition to both motions -- merely stating that he objects to the motions -- without submitting a scintilla of evidence to support his claims.[5]  *See* doc. 44.  Having carefully reviewed both motions and the supporting, undisputed evidence, the Court finds no genuine issue of material fact exists for trial, and Defendants are each entitled to judgment as a matter of law.

## I.  FACTUAL BACKGROUND

On November 20, 2010 (his tenth day in jail), Plaintiff filed a sick call request (referred to as a "kite"), noting the following medical problem: "I've had a total hip replacement that has been recently recalled, resulting in poison possibly leaking into my blood stream and/or body." Certified Copy of Plaintiff's Medical Records from the Montgomery County Jail, attached as Ex. C to Medical Defendants' summary judgment motion (doc. 37) (filed under seal) at 27.  Plaintiff further noted that he was in "very serious pain continuously" and needed medication.  *Id.* at 28. A nurse assessed him that same day, and found that Plaintiff had a "steady gait."  *Id.* at 27.  The nurse referred him to Dr. Ellis.[6]  *Id.*

On November 21, 2010, Plaintiff underwent a physical examination by a registered nurse pursuant to Jail policy.  Affidavit of Dr. Brenda Ellis, attached as Ex. A to Medical Defendants' summary judgment motion (doc. 36-1) ¶ 4; Doc. 37 at 24-26.  The written assessment, signed by

---

[3] Sergeant Robert Rosenkranz was substituted for the originally named "John Doe CO" in Plaintiff's Complaint.  Doc. 25.

[4] In their motions, Defendants challenge the merits of Plaintiff's constitutional claims, and do not seek to challenge whether or not they should be found qualifiedly immune from liability.  *See generally Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Accordingly, the Court will not engage in that analysis.

[5] Plaintiff did not timely respond to the summary judgment motions.  Accordingly, the Court issued an Order advising him that he had not responded and affording him ten additional days in which to do so. Doc. 43.  He filed the instant one-page opposition memorandum (doc. 44) in response to the Court's Order.

[6] Plaintiff filed a kite -- essentially making the same medical request -- the day before, on November 19, 2010.  Doc. 37 at 29-30.  However, the record shows that he refused a follow-up medical assessment.  *Id.*

Plaintiff, noted that he had a left hip replacement five years earlier and had related arthritis.  Doc. 37 at 25.  The report further noted that Plaintiff had "grossly normal strength and function of all extremities" and "[g]ait normal with no limitations for ADLs [daily activity limitations]."  *Id.*

On November 23, 2012, Dr. Ellis examined Plaintiff at the Jail.  Doc. 36-1 ¶ 2.  Before the examination, Dr. Ellis reviewed Plaintiff's medical file, his kites, nursing assessments, and other progress notes and screenings.  *Id.* ¶ 5.  Although Plaintiff had been walking since he was incarcerated, Plaintiff was transported to the medical unit in a wheelchair.[7]  Doc. 36-1 ¶¶ 9, 12; Doc. 37 at 23.  Plaintiff was able to get out of the wheelchair and onto the examination table without assistance and with no complaints of pain.  Doc. 36-1 ¶ 12.  During the examination, Plaintiff informed Dr. Ellis that he had proper care and rehabilitation following his hip replacement, and had never been confined to a wheelchair.  Doc. 36-1 ¶ 13.

Upon examination, Dr. Ellis found "no swelling, deformity or bruising in the hip and back area"; "no difficulty or limitations in his range of motion"; and that he "had sensation and his neurovascular system was intact distally."  *Id.* ¶ 14.  Dr. Ellis prescribed Plaintiff Tramadol (a non-narcotic pain reliever) for his pain.  *Id.* ¶ 17.  (Dr. Ellis did not prescribe him the narcotic pain reliever Vicodin, as Plaintiff requested, because the Jail precluded the dispensing of narcotics to inmates.  *Id.* ¶ 18.)  Additionally, Dr. Ellis obtained a signed medical release from Plaintiff so that she could request his records from the Dayton Pain Clinic.  Doc. 37 at 7.  Dr. Ellis determined "there was no objective basis to support any need . . . for a wheelchair for mobility," and further, that Plaintiff did not meet the Jail's medical criteria for wheelchair use.

---

[7] C.O. Cheryl Matlock stated in her affidavit that an inmate who was in the medical wait area with Plaintiff on November 23, 2010 "informed [her] that [Plaintiff,] while in the Medical Wait area, said that he was going to fake a fall so that he could get medication and medical care for his implanted hip. [Plaintiff] told the inmate that 'he was going to give a Wesley Snipes performance.'"  Doc. 39-2 ¶ 5.

Doc. 36-1 ¶ 15.  Moreover, Dr. Ellis opined that, to the extent Plaintiff was developing some osteoarthritis in his hip, using a wheelchair would aggravate that condition.  *Id.* ¶ 16.

When Dr. Ellis informed Plaintiff that his request for a wheelchair was denied, he became agitated and loudly complained as he exited the room.  *Id.* ¶ 20; Affidavit of Holly Matlock, attached as Exhibit C to Jail Staff Defendants' summary judgment motion (doc. 39-3) ¶ 7.  Dr. Ellis "observed [Plaintiff] just outside the door of the examination room, slowly and deliberately drop to the floor easing himself down to his left side."  Doc. 36-1 ¶ 20; *see also* Doc. 39-3 ¶ 10. Following his "fall," Plaintiff continued to lie on the ground and scream.  Doc. 36-1 ¶ 20; Affidavit of Cheryl Matlock, attached as Ex. B to Jail Staff Defendants' summary judgment motion (doc. 39-2) ¶ 6.  Dr. Ellis and a nurse checked Plaintiff while he was on the ground, and found no injuries.  Doc. 36-1 ¶ 21; Doc. 39-3 ¶ 11.  Nevertheless, as a precaution, Dr. Ellis ordered x-rays of Plaintiff's hip.  Doc. 36-1 ¶ 22.

Defendant C.O. Holly Matlock -- who was on duty as Plaintiff's medical escort -- was present in the hallway where Plaintiff dropped to the floor.  Doc. 39-3 ¶¶ 5-10.  She called for back-up, and a group of C.O.'s -- including Defendants Sergeant Robert Rosenkranz and C.O. James Davis, and C.O. Cheryl Matlock -- arrived at the scene where Plaintiff was lying on the floor in the hallway outside the examination room.  Doc. 39-3 ¶¶ 11-12; Affidavit of James Davis, Jr., attached as Ex. D to Jail Staff Defendants' summary judgment motion (doc. 39-4) ¶ 6; Affidavit of Sergeant Robert Rosenkranz, attached as Ex. E to Jail Staff Defendants' summary judgment motion) (doc. 39-5) ¶ 8.  Pursuant to Sergeant Rosenkranz's directive, C.O. Davis and C.O. Anderson lifted Plaintiff onto a wheelchair.  Doc. 39-3 ¶ 12; Doc. 39-4 ¶ 7; Doc. 39-5 ¶ 10. C.O. Cheryl Matlock then transported Plaintiff in a wheelchair to a medical observation room. Doc. 39-2 ¶ 7; Doc. 39-3 ¶ 12.  Plaintiff continued to yell in the medical cell for an hour.  Doc.

39-2 ¶ 7.  When he stopped yelling, C.O. Cheryl Matlock returned Plaintiff to his housing location.  *Id.*

Later that same day (November 23, 2010), C.O. Holly Matlock and C.O. James Davis, Jr. escorted Plaintiff from his housing unit to the medical unit for x-rays.  Doc. 39-3 ¶ 13; Doc. 39-4 ¶ 8.  Because a "no-wheelchair" order had been issued by the medical staff, Plaintiff had to walk. Doc. 39-3 ¶ 13; Doc. 39-4 ¶ 8.  (C.O. Matlock and C.O. Davis estimated that the distance between his housing unit and medical unit was approximately 10 steps or 30-35 feet.  Doc. 39-3 ¶ 13; Doc. 39-4 ¶ 9.)  According to C.O. Matlock, Plaintiff "displayed no difficulty in walking to the medical unit."  Doc. 39-3 ¶ 13.  Dr. Ellis determined that Plaintiff's x-rays "showed no injuries or problems other than mild osteoarthritis of [Plaintiff's] right hip," and "confirmed the left hip replacement was intact."  Doc. 36-1 ¶ 24; Doc. 37 at 21.  Accordingly, Dr. Ellis opined that no further treatment was necessary.[8]  Doc. 36-1 ¶ 24.

## II. ANALYSIS

The Court shall grant summary judgment if there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.  Fed R. Civ. P. 56.  Defendants, as the moving parties, have the initial burden of "informing the district court of the basis of [their] motion[s]," and identifying the parts of the record and/or providing evidence "which [they] believe[] demonstrates the absence of a genuine issue of material fact."  *Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to Plaintiff to "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  If Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial," summary

---

[8] Further, in December 2010, Dr. Ellis received and reviewed Plaintiff's records from the Dayton Pain Center.  Doc. 36-1 ¶ 26.  The medical records did not change Dr. Ellis's opinion -- that no further treatment was necessary.  *Id.*

judgment must be entered against him. *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of [P]laintiff's position is insufficient." *Id.* at 252. There must be evidence upon which reasonable jurors could find, by a preponderance of the evidence, that Plaintiff is entitled to a verdict. *Id.* In ruling on a summary judgment motion, the Court must view the evidence in the light most favorable to Plaintiff, the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a defendant properly moves for summary judgment with supporting Rule 56 evidence, the burden shifts to the non-movant, who must respond with evidence of the type authorized by Rule 56. *See* Fed. R. Civ. P. 56(c). Plaintiff may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. *Celotex*, 477 U.S. at 324. Instead, Plaintiff must "provide concrete evidence supporting [his] claims and establishing the existence of a genuine issue of fact." *Cloverdale Equip. Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted); *see also* Fed. R. Civ. P. 56(c). The Court is not "obligated to wade through and search the entire record for some specific facts that might support [Plaintiff's] claim[s]." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Where, as here, Plaintiff has failed to satisfy this shifting burden, the Court may deem the facts established by Defendants in their summary judgment motion as undisputed as a matter of law. *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-07 (6th Cir. 1992).

Plaintiff asserts two types of Eighth Amendment violations under § 1983: (1) inadequate medical care; and (2) excessive force. The Court has liberally construed Plaintiff's *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, as explained more fully below, he has failed to show a genuine issue of material fact regarding either claim.

## A.  Inadequate Medical Care

Plaintiff first argues that Defendants C.O. Debra Matheney, C.O. James Davis, Jr., and C.O. Holly Matlock (formerly known as Holly Rudd), Sergeant Robert Rosenkranz, Nurse Teresa O'Malley, and Dr. Brenda Ellis [9] provided inadequate medical care by (1) denying him use of a wheelchair, thereby causing him to fall in the hallway; (2) failing to obtain his records from his outside pain doctor and fill his Vicodin prescription; (3) failing to fully investigate his medical complaints; and (4) requiring him to walk (instead of transporting him in a wheelchair) from his housing unit to the medical unit to obtain x-rays.[10]  *See* Complaint (doc. 10) at PageID 30-33.  To establish an Eighth Amendment violation based on inadequate medical care, Plaintiff must prove that Defendants acted with a "'deliberate indifference'" to a substantial risk of serious harm to [him]." *Farmer v. Brennan*, 511 U.S. 825, 828 (1970).  The "deliberate indifference" standard includes both objective and subjective components.  *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008).  The objective component requires a plaintiff to show the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834.  The subjective component requires a showing that prison officials acted with "a sufficiently culpable state of mind" in denying medical care, *id.*, -- *i.e.*, "a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'"  *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5

---

[9] Dr. Ellis and Nurse Theresa, although they are contractors with the state, acted "under color of state law" within the meaning of § 1983.  *See West v. Atkins*, 487 U.S. 42, 54 (1988).

[10]   To the extent Plaintiff attempts to base his § 1983 claims on alleged verbal harassment by the Jail staff, such facts, even if true, do not rise to the level of a Eighth Amendment violation.  *See Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004).

(6th Cir. 1976). Negligence (*i.e.*, medical malpractice) claims are not actionable under § 1983. *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007).

Even assuming, *arguendo*, that Plaintiff's pain/arthritis in his hip and back amounts to a serious medical need, Plaintiff has failed to show a genuine issue of material fact that Defendants acted with the requisite intent to support a claim of deliberate indifference to that medical need. *See Farmer*, 511 U.S. at 835-36. To the contrary, the record demonstrates that Plaintiff received prompt and adequate medical care both before and after his fall. Dr. Ellis conducted a physical examination of Plaintiff, reviewed his available Jail medical records, and requested Plaintiff's outside medical records. *See* doc. 36-1 ¶¶ 5-15. Based on that information, Dr. Ellis reasonably determined that Plaintiff did not need to use a wheelchair and, that using a wheelchair would aggravate his condition. *Id.* ¶¶ 15-16. Further, Dr. Ellis prescribed Plaintiff Tramadol for his pain. *Id.* ¶ 17. After the fall, Dr. Ellis ordered x-rays which confirmed Plaintiff did not sustain any injuries. *Id.* ¶¶ 22-24.

Moreover, there is no basis for Plaintiff's inadequate medical care claim against the non-medical staff Defendants C.O. Matheney, C.O. Davis, C.O. Rudd, and Sergeant Rosenkranz. C.O. Matheny may have assisted in transporting Plaintiff to the medical wait area in a wheelchair for his appointment with Dr. Ellis, but had no other involvement with him.[11] *See* Affidavit of Debra Matheney, attached as Ex. A to Jail Staff Defendants' summary judgment motion (doc. 39-1) ¶ 7. After Plaintiff's fall, C.O. Davis and C.O. Rudd appropriately waited for instructions whether to move Plaintiff from the floor. *See* Doc. 39-3 ¶¶ 11-12; Doc. 39-4 ¶ 6; Doc. 39-5 ¶ 8. Sergeant Rosenkranz consulted with the nurse, and was informed that Plaintiff did not require any additional medical care and could be physically moved. Doc. 39-5 ¶ 9. Accordingly,

---

[11] Defendant C.O. Matheney has no specific recollection of wheeling Plaintiff to the medical wait area. Doc. 39-1. She acknowledges, however, that she may have so acted, as she was working as the medical escort on November 23, 2010. *Id.*

Sergeant Rosenkranz reasonably directed C.O. Davis and C.O. Anderson to lift Plaintiff off the floor and into a wheelchair. *Id.* ¶ 10.  The officers timely complied with Rosenkranz's directive. *Id.*  Moreover, C.O. Holly Matlock and C.O. Davis properly followed the medical staff's "no-wheelchair" order, and did not transport Plaintiff to the medical unit for x-rays in a wheelchair. Doc. 39-3 ¶ 13; Doc. 39-4 ¶ 8.  *See Robbins v. Black*, 351 F. App'x 58, 63 (6th Cir. 2008) (finding that non-medical jail staff "are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise").  Therefore, having failed to produce evidence from which a reasonable juror could infer that the medical and Jail staff were deliberately indifferent to his serious medical needs, Plaintiff has not satisfied his summary judgment burden.  Accordingly, summary judgment should be entered in favor of Defendants on Plaintiff's § 1983 Eighth Amendment claim for inadequate medical care.

Finally, the Court notes that summary judgment should be entered in favor of Defendant O'Malley for an additional reason.  O'Malley submitted an affidavit stating that she was not working on November 23, 2010.  Affidavit of Teresa O'Malley, attached as Ex. B to Medical Defendants' summary judgment motion (Doc. 36-2).  Nor did she have any involvement with Plaintiffs' medical treatment related to his fall.  *Id.*  These assertions are not rebutted by Plaintiff, and thus undisputed.  Accordingly, summary judgment should be entered in favor of Defendant O'Malley.

## B.  Use of Excessive Force

Plaintiff's second Eighth Amendment § 1983 claim -- that Sergeant Rosenkranz used excessive force against him -- likewise fails.  Not all applications of force rise to the level of an Eighth Amendment violation; it is sometimes necessary -- to maintain discipline and security in the prison -- that "inmates be subjected to physical contact actionable as assault under common

law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002).  To that end, the use of force is unconstitutionally excessive only when it "reflects an unnecessary and wanton infliction of pain." *Id.*  "[T]he core judicial inquiry [in analyzing excessive force claims]. . . is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 7 (1992).

Here, Plaintiff has not come forth with even a scintilla of evidence to demonstrate that Sergeant Rosenkranz applied *any* force against him on November 23, 2010 following his fall. Accordingly, he has failed to satisfy his summary judgment burden in response to Defendants' motion.  Moreover, attached as an exhibit to the Jail Staff Defendants' summary judgment motion are two visual recordings -- the first showing Plaintiff in the medical wait area before his November 23, 2010 appointment with Dr. Ellis; the second showing Plaintiff entering and exiting the treatment room, his fall in the hallway outside the examination room, and the Jail staff's response to his fall.  *See* Ex. F. to Jail Staff Defendants' summary judgment motion (on file with the Court).  The Court watched these two visual recordings -- both of which are undisputed by Plaintiff -- and, contrary to the assertions in Plaintiff's complaint, Sergeant Rosenkranz did not handcuff Plaintiff, "pounce" him into the wheelchair, pull him backwards, or choke him with his shirt.  *See* doc. 10 at PageID 31-32.  Rather, the undisputed evidence demonstrates, acting in compliance with Sergeant Rosenkranz's directive, C.O. Davis and C.O. Anderson carefully lifted him into the wheelchair.  Then, C.O. Cheryl Matlock -- not Rosenkranz -- transported Plaintiff in a wheelchair to the medical observation room.  Doc. 39-2 ¶ 7.  Accordingly, summary judgment should also be entered against Plaintiff on his § 1983 Eighth Amendment claim for use of excessive force.

## III. RECOMMENDATION

## IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' two motions for summary judgment (docs. 36, 39) **BOTH BE GRANTED**;

2.    Judgment be entered in favor of Defendants and against Plaintiff;

3.    The Court **CERTIFY** that an appeal of an Order adopting this Report and Recommendation would be frivolous and not be taken in objective good faith, and therefore Plaintiff be **DENIED** *in forma pauperis* status on such an appeal.  *See* 28 U.S.C. §1915(a)(3); and

4.    This case be **CLOSED**.

January 15, 2012                                                    s/ **Michael J. Newman**
                                                                            United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).